UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:19-CR-060 |
| | ) | |
| DANNY DALE MORGAN | ) | |

**MEMORANDUM AND ORDER**

Now before the Court is the defendant's *pro se* motion for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A)(i), and for the appointment of counsel. [Doc. 493]. That filing has been supplemented by Federal Defender Services of Eastern Tennessee [docs. 502, 506], thereby mooting the request for appointed counsel.

The United States has responded in opposition [docs. 495, 508] and the defendant has not replied within the time allowed by this Court's Local Rules. For the reasons that follow, the defendant's motion will be denied.

### I. BACKGROUND

Less than 17 months ago, this Court sentenced the defendant to a 110-month term of imprisonment for conspiring to distribute methamphetamine. The defendant is presently housed at FCI Terre Haute with a projected release date of March 5, 2027. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Jun. 7, 2021). He now moves for compassionate release due to the COVID-19 pandemic, hypertension, hepatitis C, liver problems, obesity, PTSD, possible diabetes, and a desire to serve as caregiver for his parents.

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit have previously turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but are no longer to do so, at least as to

Case 2:19-cr-00060-RLJ-CRW Document 512 Filed 06/10/21 Page 2 of 9 PageID #: 2870

compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, 984 F.3d 516 (6th Cir. 2021).[1] "District courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114.

### A. Exhaustion

The defendant has previously submitted a compassionate release request to the BOP, and more than 30 days have passed since that request was received by the warden. [Doc. 493, ex. 1]. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

### B. Merits

As mentioned above, in support of his motion the defendant cites the COVID-19 pandemic, hypertension, hepatitis C, liver problems, obesity, PTSD, possible diabetes, and his desire to serve as a caregiver for his parents. Consistent with § 3582 and the Sixth Circuit's holding in *Jones*, this Court has considered the defendant's arguments (individually and in combination) along with the broader facts of this case in light of the pertinent § 3553(a) factors. Pursuant to 18 U.S.C. § 3553(a),

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

---

[1] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

(2) the need for the sentence imposed—

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

      (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

      (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .

   . . .

(5) any pertinent policy statement—

   (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

   (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

At the defendant's correctional institution, there are currently no inmates or staff positive for COVID-19, with 379 inmates and 128 staff having recovered, and four inmate deaths. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Jun. 7, 2021). These numbers are historically significant, but the Court simultaneously notes that outside the prison setting our nation remains on alert in terms of COVID diagnoses, variants, hospitalizations, and deaths. Further, the COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]"). Additionally, the BOP's vaccination efforts are underway, with 286 staff and 1,293 inmates having been fully vaccinated at the defendant's prison complex. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Jun. 7, 2021).[2]

The Court appreciates the defendant's stated desire to help care for his family members. He has submitted two letters from his mother claiming numerous serious health

---

[2] In his motion dated March 5, 2021, the defendant expressed concern that "[v]accines will be offered at Terre Haute but that is months away from taking place." [Doc. 493, p. 5]. Curiously, however, the defendant was offered a COVID vaccination on April 5, 2021, but he refused it. [Doc. 495, ex. 1].

5

conditions among various relatives and herself (including, for example, that the mother's left hip has purportedly been replaced eight times). [Doc. 493, ex. 1; doc. 502; ex. 1]. As pointed out by the United States, however, those alleged health issues are undocumented. Further, it is sadly the norm (rather than an "extraordinary" circumstance) for persons sentenced by this Court to leave behind vulnerable family members.

BOP medical records confirm that the defendant has been diagnosed with, and receives treatment for, hypertension and mild cirrhosis of the liver. [Doc. 506]. Presently, it is thought that those conditions "can" create an increased risk of severe illness from COVID-19. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jun. 7, 2021). Accordingly, for purposes of the instant motion only, the Court will presume—without finding—that the defendant has carried his burden of establishing extraordinary and compelling reasons for compassionate release.

The Court next turns to the 18 U.S.C. § 3553(a) factors. As to the nature and circumstances of the instant offense and the defendant's history and characteristics, the record in this case does not indicate that the defendant was anything more than a street dealer. [Presentence Investigation Report ("PSR"), doc. 188, ¶¶ 7-14]. His prior convictions, however, present a troubling pattern of violent offenses and flight.[3]

In 2001, the defendant was convicted of aggravated assault, assault on an officer, reckless endangerment, and three counts of evading arrest. [*Id.*, ¶ 34]. After driving away

---

[3] The defendant was sentenced as a criminal history category VI in this case, the highest in the federal system. [Doc. 188, ¶ 53].

6

from a gas pump without paying (with an open container of alcohol between his legs), the defendant led officers on a high-speed chase, at times driving toward oncoming traffic and causing other drivers "to swerve into other lanes to avoid an accident." [*Id.*]. The defendant eventually lost control of his vehicle and then struck an officer's car head on. [*Id.*]. The defendant then drove his car directly at the officer, who had to jump back into his car to escape injury. [*Id.*]. The defendant wrecked soon thereafter and fled on foot. [*Id.*]. When located, he fled again. [*Id.*]. When law enforcement subsequently attempted to restrain the defendant, he pushed an officer to the ground and fled yet again before finally being apprehended. [*Id.*]. The defendant again fled law enforcement in 2016, "accellerat[ing] and refus[ing] to stop the vehicle" and subsequently fleeing on foot. [*Id.*, ¶ 47].

There were two other assault convictions in 2001. In the first, the defendant jumped on the victim "and bit him in the back." [*Id.*, ¶ 36]. In the other, the defendant grabbed and pushed his wife following an "altercation" with "his father-in-law, brothers-in-law, and other people." [*Id.*, ¶ 37]. 2010 brought another assault conviction after the defendant struck the victim in the face, knocked him unconscious, and shattered his cheekbone, requiring reconstructive surgery. [*Id.*, ¶ 43].

The defendant was convicted of vehicular assault in 2013. There, he drove into a tree and "had a strong odor of an alcoholic beverage about his person." [*Id.*, ¶ 45]. The passenger victim who owned the vehicle had to be flown to the hospital after sustaining serious injury. [*Id.*]. She reported that "the defendant would not let her have her vehicle back, and he would not let her out of the vehicle." [*Id.*].

7

There have been several convictions for theft and controlled substance offenses. [*Id.*, ¶¶ 33, 40-41, 48]. Prior probationary periods have twice been revoked, and other probation violations were pending at the time of sentencing in this case. [*Id.*, ¶¶ 33, 44, 48-49]. There is also a concerning history of convictions for driving under the influence, driving on a suspended license, public intoxication, and reckless driving, further illustrating the defendant's disrespect for the law and his danger to the community. [*Id.*, ¶¶ 32-35, 38-40, 42, 44-48, 50]. In one of those cases, the defendant was intoxicated and had a two-year-old child in the back seat. [*Id.*, ¶ 35].

The defendant's substance abuse history began at age 15. [*Id.*, ¶ 76]. He has used morphine while in prison and, when searched at a jail following a 2019 arrest for failure to appear, had marijuana and methamphetamine "hidden in a body cavity." [*Id.*, ¶¶ 12, 76]. The defendant is a suspected gang member. [*Id.*, ¶ 68; docs. 210, 242]. He has previously received medical treatment for complaints including pain, hepatitis C, hypertension, and obesity, none of which prevented him from participating in the instant methamphetamine distribution conspiracy. [*Id.*, ¶ 71-74].

According to SENTRY, the defendant has incurred no disciplinary sanctions during his relatively brief period of incarceration in this case. SENTRY further shows that the defendant is employed, has completed a small amount of programming, and has earned his GED. For all these things, he is commended. The BOP nonetheless considers him a medium-security inmate with a high risk of recidivism.

The defendant's good conduct during his current term of imprisonment is strongly outweighed by his lengthy criminal history involving drugs, flight, and assault—a

8

combination which presents an elevated risk of harm to the community. Additionally, almost six years of actual time remains on his bottom-of-the-guidelines sentence. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) (Several § 3553(a) factors "permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). Compassionate release on the facts of this case would not reflect the seriousness of the offense of conviction and the defendant's broader criminal history, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes of this defendant.

### III. CONCLUSION

As provided herein, the defendant's motion for compassionate release [doc. 493] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge