UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 2:19-CR-060 |
| ) | |
| DANNY DALE MORGAN ) | |

# MEMORANDUM AND ORDER

Now before the Court is the defendant's renewed *pro se* emergency motion for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A)(i), along with a renewed emergency *pro se* motion for the appointment of counsel. [Docs. 526, 527]. The United States has responded in opposition [docs. 533, 534] and the defendant has not replied within the time allowed by this Court's Local Rules. For the reasons that follow, the defendant's motions will be denied.

## I. BACKGROUND

In January 2020, this Court sentenced the defendant to a 110-month term of imprisonment for conspiring to distribute methamphetamine. The defendant is presently housed at FCI Terre Haute with a projected release date of March 19, 2027. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited June 22, 2022). By his renewed motion, he seeks compassionate release due to the COVID-19 pandemic, hypertension, hepatitis C, liver problems, type 2 diabetes, a history of smoking, and his desire to serve as caregiver for his mother.

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to do so on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit previously turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but are no longer to do so, at least as to compassionate

release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, 984 F.3d 516 (6th Cir. 2021).[1]

In *Jones*, the Sixth Circuit observed that "[d]istrict courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." 980 F.3d at 1114. Subsequently, in *Elias*, the appellate court "clarified" that "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." 984 F.3d at 519.

### A. Exhaustion

The Court has previously found that the defendant submitted a compassionate release request to the BOP, and that more than 30 days have passed since that request was received by the warden. [Doc. 512, p. 3; doc. 493, Ex. 1]. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

### B. Merits

As mentioned above, in support of his motion the defendant cites the COVID-19 pandemic, hypertension, hepatitis C, liver problems, type 2 diabetes, a history of smoking, and his desire to serve as caregiver for his mother. The defendant presented similar arguments in support of his prior compassionate release request. [Docs. 493, 502, 506].

In denying the defendant's previous motions, the Court presumed, without deciding, that the defendant had shown extraordinary and compelling reasons for compassionate

---

[1] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

release. The Court nonetheless denied his motions, finding that the defendant's release from prison would be inconsistent with the 18 U.S.C. § 3553(a) factors. [Doc. 512, p. 6-9]. Again, the Court "may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *Elias*, 984 F.3d at 519.

The Court again finds that the defendant's release from prison would not be consistent with the 18 U.S.C. § 3553(a) factors. Accordingly, the Court will not engage in another discussion of the defendant's arguments herein pertaining to extraordinary and compelling grounds for compassionate release.

Pursuant to 18 U.S.C. § 3553(a),

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .

. . .

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Court adopts and restates its prior discussion of the 3553(a) factors in this case:

As to the nature and circumstances of the instant offense and the defendant's history and characteristics, the record in this case does not indicate that the defendant was anything more than a street dealer. [Presentence Investigation Report ("PSR"), doc. 188, ¶¶ 7-14]. His prior convictions, however, present a troubling pattern of violent offenses and flight.

5

In 2001, the defendant was convicted of aggravated assault, assault on an officer, reckless endangerment, and three counts of evading arrest. [*Id.*, ¶ 34]. After driving away from a gas pump without paying (with an open container of alcohol between his legs), the defendant led officers on a high-speed chase, at times driving toward oncoming traffic and causing other drivers "to swerve into other lanes to avoid an accident." [*Id.*]. The defendant eventually lost control of his vehicle and then struck an officer's car head on. [*Id.*]. The defendant then drove his car directly at the officer, who had to jump back into his car to escape injury. [*Id.*]. The defendant wrecked soon thereafter and fled on foot. [*Id.*]. When located, he fled again. [*Id.*]. When law enforcement subsequently attempted to restrain the defendant, he pushed an officer to the ground and fled yet again before finally being apprehended. [*Id.*]. The defendant again fled law enforcement in 2016, "accellerat[ing] and refus[ing] to stop the vehicle" and subsequently fleeing on foot. [*Id.*, ¶ 47].

There were two other assault convictions in 2001. In the first, the defendant jumped on the victim "and bit him in the back." [*Id.*, ¶ 36]. In the other, the defendant grabbed and pushed his wife following an "altercation" with "his father-in-law, brothers-in-law, and other people." [*Id.*, ¶ 37]. 2010 brought another assault conviction after the defendant struck the victim in the face, knocked him unconscious, and shattered his cheekbone, requiring reconstructive surgery. [*Id.*, ¶ 43].

The defendant was convicted of vehicular assault in 2013. There, he drove into a tree and "had a strong odor of an alcoholic beverage about his person." [*Id.*, ¶ 45]. The passenger victim who owned the vehicle had to be flown to the hospital after sustaining serious injury. [*Id.*]. She reported that "the defendant would not let her have her vehicle back, and he would not let her out of the vehicle." [*Id.*].

There have been several convictions for theft and controlled substance offenses. [*Id.*, ¶¶ 33, 40-41, 48]. Prior probationary periods have twice been revoked, and other probation violations were pending at the time of sentencing in this case. [*Id.*, ¶¶ 33, 44, 48-49]. There is also a concerning history of convictions for driving under the influence, driving on a suspended license, public intoxication, and reckless driving, further illustrating the defendant's disrespect for the law and his danger to the community. [*Id.*, ¶¶ 32-35, 38-40, 42, 44-48, 50]. In one of those cases, the defendant was intoxicated and had a two-year-old child in the back seat. [*Id.*, ¶ 35].

> The defendant's substance abuse history began at age 15. [*Id.*, ¶ 76]. He has used morphine while in prison and, when searched at a jail following a 2019 arrest for failure to appear, had marijuana and methamphetamine "hidden in a body cavity." [*Id.*, ¶¶ 12, 76]. The defendant is a suspected gang member. [*Id.*, ¶ 68; docs. 210, 242]. He has previously received medical treatment for complaints including pain, hepatitis C, hypertension, and obesity, none of which prevented him from participating in the instant methamphetamine distribution conspiracy. [*Id.*, ¶ 71-74].
>
> According to SENTRY, the defendant has incurred no disciplinary sanctions during his relatively brief period of incarceration in this case. SENTRY further shows that the defendant is employed, has completed a small amount of programming, and has earned his GED. For all these things, he is commended. The BOP nonetheless considers him a medium-security inmate with a high risk of recidivism.

[Doc. 512, p. 6-8] (footnote omitted).

In his renewed motion, the defendant claims that he continues to "maintain[] a disciplinary-free record." [Doc. 527, p. 4]. That statement is not true. Although relatively minor in nature, the defendant has incurred four disciplinary sanctions since May 2021. [Doc. 533, Ex. 2]. Regardless, the Court continues to appreciate that the defendant has earned his GED, that he has taken approximately three dozen hours of classes, and that he is apparently still working while incarcerated.

Those rehabilitative efforts are, however, as the Court previously observed, "strongly outweighed by his lengthy criminal history involving drugs, flight, and assault—a combination which presents an elevated risk of harm to the community." [Doc. 512, p. 8-9]. The defendant was sentenced as a criminal history category VI in this case—the highest in the federal system—and that criminal history as summarized above is particularly troubling. [Doc. 188, ¶ 53]. Additionally, almost five years of actual time remains on his bottom-of-the-guidelines sentence. *See United States v. Kincaid*, 802 F.

7

App'x 187, 188 (6th Cir. 2020) (Several § 3553(a) factors "permit the court to consider the amount of time served in determining whether a sentence modification is appropriate.").

In his renewed motion, the defendant claims that he was previously denied compassionate release by this Court "due to a lack of evidence showing his mother's medical conditions." [Doc. 527, p. 2]. That is a complete misstatement of the record. The prior motion was denied due to this defendant's criminal history. For that same reason, the instant motion will also be denied. The mother's needs, whatever they may in fact be, and the defendant's health concerns in light COVID-19, whatever legitimacy those concerns might possibly have, are strongly outweighed by the needs to protect the public, promote respect for the law, and provide adequate deterrence and just punishment.

### III. APPOINTMENT OF COUNSEL

As for the defendant's request for appointed counsel, there is no constitutional right to an attorney in post-conviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); *Foster v. United States*, 345 F.2d 675, 676 (6th Cir. 1965) (holding that the constitutional right to counsel does not extend to collateral proceedings). A district court has *discretion*, under 18 U.S.C. § 3006A(a)(2), to appoint counsel when "the interests of justice so require." In exercising that discretion, a court should consider several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).

The compassionate release arguments presented to the Court in this case are straightforward and familiar, not beyond the capability of an ordinary *pro se* litigant. Moreover, pursuant to this court's Standing Order SO-19-04, Federal Defender Services of Eastern Tennessee ("FDSET") has already been appointed to represent all defendants who file a *pro se* § 3582(c)(1)(A) motion. FDSET in fact supplemented this defendant's prior compassionate release motion. [Docs. 502, 506].

## IV. CONCLUSION

As provided herein, the defendant's renewed motion for compassionate release and his motion for appointment of counsel [docs. 526, 527] are **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge

9

Case 2:19-cr-00060-RLJ-CRW   Document 539   Filed 06/23/22   Page 9 of 9   PageID #: 3355